Now, Mr. Hawkins, you're up. All right. Now, it should not be a secret to you. Come on. Because we sent you a directive that jurisdiction was a question for us. It happens frequently that the parties kind of glide past jurisdiction because they want an answer. But as you well know, we have to be sure of our jurisdiction. So rather than, I won't say blindside you, rather than you find it out now, we sent it out so you had some time to think about it, you know, et cetera, et cetera. We both got your filings. They were all shocked that they didn't come at the 11th hour of the deadline for when they were to be filed. One came, I think, early. Dubiously helpful, but early. And then the other guy. So you'll have your run on, you know, what the case is. But just know it is a premier concern about, you know, the being appellate jurisdiction in it. So though you filed it, you know, that's what's teed up. All right. And anyway, you'll be okay on your time. I just want to make it clear, the fact that you filed it doesn't mean that that's not what we've got to be sunk in. Because if we don't have jurisdiction, obviously the rest of it doesn't matter. Yes, Your Honor. May it please the Court. I fully intended to address the jurisdictional issue first because, well, you sent us that notice. So there are two primary considerations here. First of all, does Judge Brady's order fit squarely within 1291? I would submit that it does. Judge Brady's order was abundantly clear that he was dismissing all 1973 claims. But it was also abundantly clear this excess judgment claim was going forward so clear that the other side then filed a second summary judgment motion on the merits. And you said to the judge, well, we need more discovery before responding. Will you give us time for discovery? He says yes. So isn't all that that happened after this order completely inconsistent with saying that the district court judge meant to dismiss the whole case? Well, I don't think he did intend to dismiss the whole case. I think he made a mistake. So any time the district judge makes a mistake and doesn't dismiss the whole case, there's jurisdiction over an interlocutory order? People are always arguing that we're here because someone's saying there was a mistake. That's every case. Correct. And, no, we don't believe that. What we do believe is is that Judge Brady is operating under the prior law, prior to the Kelly case that this court issued. Louisiana courts and the federal colleagues analyzed excess judgment outside of the context of 1973. Kelly had made it clear that all excess judgment liability cases arise under 1973. So it is a legal impossibility for Judge Brady to have simultaneously dismissed 1973 and maintained. Well, so I'll ask you a very – why didn't then, given this confusion, why didn't someone say to Judge Brady, did you mean to dismiss everything because, you know, this statute now encompasses everything? Or given that we've got other motions filed since your order, did you mean to keep this other – I mean, why wasn't he asked that, to straighten that out? Well, we believe we did. There was a second motion which we said – we, the plaintiffs, made clear to the court that 1973 and excess judgment liability are one and the same, and we argued the Kelly case a number of times to the court, saying that you can't simultaneously dismiss – we didn't directly address it, I guess, but we were discussing with the court how they were one and the same. And with this case, in formulating my argument for today, I – And what did he say? His second ruling was much more succinct, which was denied and come back after some discovery has been done. He didn't issue an in-depth ruling. Right. But you didn't ask him, did your order dispose of all claims? Please enter – we think it did. Please, therefore, enter final judgment so we can go up to the Fifth Circuit and no one will have any questions about the jurisdiction because there will be a final judgment. That is correct. We could have asked him to certify, but there was no indication that – Judge Brady did not give us any indication whatsoever he would change his mind. In fact, without being presented any evidence because we weren't allowed to do discovery, Judge Brady issued an opinion in his first ruling that it was unlikely the plaintiff would prevail at all. That was a clear signal to us that Judge Brady had already decided that he would not reconsider this issue. Now, I could have been wrong in that conclusion, but generally when an Article III judge tells me he's of an opinion, I say yes, sir, and move on. In this particular instance – All the time parties say, oh, you know, just move for entry of judgment. We think the case is over. Enter a final judgment. That's routine. No one did that here. That is correct, Your Honor, and to that extent, as I said, I think it's because of what I see as a clear intent to dismiss 1973. I think that Judge Kelly – excuse me, Judge Brady believes that 1973 and excess judgment liability operate separately. In formulating the argument for today, what I was going to suggest to this Court is that this is a quintessential case of all roads lead to Rome. If this Court decides that there was no final judgment, it is my experience that the Court will remand it and say there was no final judgment under jurisdiction, and then you'll explain why. And the why will be because excess judgment liability cases arise under 1973A. So you certainly didn't dismiss that because you maintained it. There is a very practical consideration here. At the end of the day, presupposing plaintiff survives every other pretrial motion, motion for summary judgment, Rule 56, and Judge Brady is charged with instructing a jury on the law, what statute does he refer to? What cases does he refer to? If the ruling as it stands stays and that 1973 is dismissed, how does the judge instruct a jury? He simply can't. The operable provisions of 1973 are paragraphs A and C. The only way the plaintiff can collect damages if he prevails is under paragraph C. The statutory duty is found in A, yet very, very clearly Judge Brady said 1973 is dismissed with prejudice. He himself took away the only tool that he has to instruct a jury. I think like the last case, you're putting too much on a couple words and an opinion as opposed to what the district court actually did, which is allow the excess judgment claim to go forward, allow for discovery before he ruled on a second summary judgment motion on that. I mean, I must be missing something, but explain to me, if you're right that the whole case was thrown out, why in the world is there a cross-appeal from the other side saying the district court made a mistake in not throwing out the excess judgment claim? There wouldn't be a cross-appeal if your whole case got thrown out. Well, interestingly enough, their brief, Shelter's brief, says both positions. To the extent that it's not, we want to go ahead and have a second bite of the apple as well. And we were actually initially confused when the Court was raising the jurisdiction issue on whether it was on plaintiff's appeal or on defendant's appeal. I don't believe that you can maintain simultaneously the idea that there was a full judgment and a partial judgment. It either is or it is not. And as what I'm suggesting to the Court today is that either decision that this Court makes, either to address this on a jurisdictional basis and remand, there will be some analysis. And that analysis will be the judge did not dismiss this because excess judgment arises under 1973. So even though internally it is inconsistent, it is very plausible that Judge Brady intended to do that. His opinion doesn't really suggest that. He goes through a whole lot of analysis. But do you agree the district court thought there was a claim still pending for excess judgment? Yes, I do. Okay. So why isn't that the end of the inquiry? It doesn't matter what the district court thought? It matters what the parties think happened below? No, Your Honor. The reason that there's a difference and the distinction is how that cause of action is moved forward. This cause of action can only be moved forward under the statute that Judge Brady clearly dismissed. And without that vehicle, the plaintiff has no cause of action. So even though he styled his opinion as a partial summary judgment, the net effect of it is I granted full summary judgment, because the only vehicle under Louisiana law, this Court, on certified questions to the Louisiana Supreme Court, asked that very question. And the Louisiana Supreme Court very, very clearly came back and said, we are now holding that this statute was a remedial legislative measure. So we're back to saying that the district court made a mistake. That's why there's jurisdiction. So, again, since every person, appellant in our court is saying a mistake was made, that means there's always going to be jurisdiction. No, Your Honor. Again, depending on how one reads the opinion, if one reads the opinion saying that, yes, Judge Brady clearly dismissed all 1973 claims, it stands to logic he also dismissed the excess judgment, which arises only under 1973a. The appeal is fundamentally, an appeal is from a judgment, not from the opinion. Correct. I mean, that's hornbooked, but it's just so true. And we get off into what the judge says. I mean, we look at the judgment. Now, if you say it's not discernible, but the appeal is from the judgment, you know, not from the reason. So what about the judgment and the effect of it makes us know that there's jurisdiction, as opposed to he said this here and he said that there. I mean, was it supposed to get in his head? I don't have this memorized verbatim, but I believe the judgment says plaintiff's claims under 22-1973 are dismissed with prejudice. The very next sentence says plaintiff's summary judgment as to excess judgment liability is denied. What we're saying is that is a legal impossibility. He has to pick one side or the other. He can't have both. They are the same thing. He has simultaneously turned the tap on and off. Why do you want to have jurisdiction? I mean, if you've got a claim alive down there, go forward. I mean, I guess I'm confused. Most plaintiffs, if they still are alive, if they're breathing at all, want to get to trial and get a settlement? I mean, it's just a little strange to me. The reason here, Your Honor, is very clear to me, which is as a practical matter, how does the judge rule on the previously filed 56 motion when he doesn't have the legal standard? The legal standard is 1973. It's already ruled it's final. That standard doesn't apply to me anymore. Where do we go for analysis? What is he going to do if we survive that 56 motion and we proceed to trial? How is he going to instruct a jury? What will happen is that we're going to get there, I suspect, and then Shelter's going to argue law of the case. You've already ruled that this claim is gone. And if that claim is gone, we're back here arguing the very same thing. Now, I understand that there are two plausible resolutions. Plausible resolution one is that you remand this case on jurisdiction, that, in fact, he did not dismiss everything. What I would request is that when you do so, you simply explain to the judge that you didn't dismiss 1973 because you maintained an excess judgment liability. If that's the case, we're comfortable with that resolution. The second resolution is you did dismiss it. You said 1973. This encompasses 1973, so let's look at the merits. The merits of the case are entirely legal at this point. I say merits. The substance of what we're talking about is entirely legal. It's about res judicata. The briefs, I think, adequately address res judicata. There are five factors that have to be met. It's strict digeris, and each factor must be met. In this particular instance, factors four and five are not met. The Bergerie v. Poulin case makes it clear that factor four, that the cause of action must have existed at the time that the original judgment was entered. As this Court has ruled, Belanger v. Geico, adopting Matthews v. Blanchard from the Louisiana Supreme Court, it is the entry of the judgment which gives rise to the cause of action. So it is a logical fallacy to assume that a judgment that creates a cause of action also cancels it. If the Court were to assume that, essentially you would say there is no cause of action for excess judgment liability, which would fly in the face of this Court's recent decisions. The fifth factor is did the cause of action arise out of the same transaction and occurrence? Again, the original tort claim arose out of a motor vehicle accident. Mr. Babin's original claims arose from a breach of contract between himself and Shelter. Mr. Smith's current claim arises out of a violation of a statutory duty. That statutory duty is examined in a totality of circumstances. It relates back to the very day that Shelter first became on notice of this claim through today. One of the factors that the Court must consider, which is different from the other factors, is the insurer's post-trial efforts at settlement. That certainly could not have arose out of the same transaction and occurrence as either of the previous two, and so both factors four and five are missing. It is because of that that the res judicata argument must fall. Shelter has also asked this Court to instruct the District Court to afford full faith and credit to the judgment. Full faith and credit under 28 U.S.C. 1738 requires the entry of a valid final judgment. If there was no valid final judgment, there's nothing to which to afford full faith and credit. We think that the very first domino here is the answer to the jurisdictional question. If the Court chooses or believes that it does not have jurisdiction and remands the case, we simply ask for an instruction why it's being remanded, which is by maintaining excess judgment liability, you maintained a 1973 cause of action. If the Court believes that it was a final judgment, we suggest that Judge Brady erred in finding that the previous claim was previously litigated when it had not been. Again, the statute and the cases make it clear that the cause of action comes into existence the moment he puts pen to paper. And if that's the moment, it defies logic to assume that that judgment consumed the cause of action it was creating. And in so doing, basically we'd have the Ouroboros of the snake eating its own tail. And I'll yield the rest of my time. Thank you. Thank you, sir. All right, Mr. Morrow. Good morning, afternoon, Your Honors. My name is Gregor Kent Morrow, Jr., and I represent Shelter in this case. May it please the Court, I am the counsel who filed the supplemental letter. That's of dubious help to you on the jurisdictional issue, but I'm ready to address any jurisdictional questions that you may have for me at this time. Well, I think you heard. I mean, how can you be saying there's jurisdiction yet you're here on a cross appeal because there's a claim that the district court let get past summary judgment, at least your rest judicata summary judgment? Those are totally inconsistent positions. If there's a claim still pending in district court, it's an interlocutory appeal, right? Correct. Now, what we took was a cross appeal based upon the appellate delays of plaintiff's initial filed appeal. However, we do believe that there's a good faith argument that this was in actuality a final judgment under 1291, especially when you look at the Cohen Doctrine, collateral doctrine. The question is — Before you get into all this complicated case law, how is there a final judgment when the last thing the district court did was say, you filed a second summary judgment motion on the merits after you lost on rest judicata as to excess judgment. Correct. You filed a summary judgment just on the merits. They say we need more discovery. The last thing I see the district court did said, okay, no, I agree with plaintiffs. There needs to be more discovery before I rule on the merits of this claim. The timeline as it goes is this. Filed rest judicata. We got the ruling that's here before the court. Then shortly thereafter, quickly filed motion for summary judgment on the merits of the excess judgment suit. And then right after that, plaintiff's notice of appeal, even before the court could even address some of these issues at the motion for summary judgment for excess. And at that point, the decision was made to do a cross appeal because we actually believe that there is a good-faith argument concerning — But focus on what the district court did. On September 15th, plaintiffs filed their notice of appeal. The next day, on September 16th, the district judge grants the motion for additional discovery before he rules on summary judgment. So how can that be consistent with the district judge thinking there were no claims left? Well, the question here is a matter of practicality under Cohen, not technicality. And as I agree with plaintiffs, as they've stated in briefs here, their claim is over under 1973 because that is the source and summit of excess judgment liability. You cannot move forward without it. And if you go back to res judicata principles under Louisiana law, which this honorable court must apply, the question is not just res judicata. It's also issue preclusion. And under there, if you look at Louisiana revised statute 13, 40 to 31, which this honorable court and the Federal courts are obligated to apply, you see that 3 is a judgment in favor of either the plaintiff or the defendant is conclusive in any subsequent action between them with respect to any issue actually litigated and determined if its determination was essential to that judgment. And here's… Did the district court rule on issue preclusion? I thought it just ruled on claim preclusion. The district court ruled on res judicata, which in Louisiana includes both. Okay? Under the statute that Louisiana has enacted. Now, the question here is this. We have a trial court that said Shelter did absolutely nothing wrong in its choice to indemnify, in its choice to deny coverage, and concerning the allegations of misrepresentation. I'm not going to argue that the district court took bad faith out of the case, and bad faith is prerequisite to 1973 liability. Exactly. And so we argue, and Shelter's position is that the court issued a final ruling as a practical matter, but as a technicality kept the case open, and that is where this court has appellate jurisdiction under the Cohen Doctrine and also under 1291, where it can realize that it is actually a correct final judgment. Why didn't you say to the district court, look, practically speaking, the case is over, enter a final judgment, and then we wouldn't have this confusion? The reason that we didn't ask is that we asked again for a motion for summary judgment, and the court pretty much told us continue with discovery. The court did what? And the court told us in order, no, continue with discovery. I'm not going to rule on that until we get there. And those are the questions. The district court didn't realize what he was doing. The consequences of saying bad faith out of the case. Correct. And that is where the practicality over technicality. Jurisdiction is a technicality. But there is jurisprudential authorization for this particular instance of appeal. And here's the bigger issue is, okay, typically collateral order doctrine is for like sovereign immunity or police immunity or cases where the case should not be tried if sovereign immunity is decided. They just want to avoid litigation if this determination can be determined first. If you look under Louisiana law, which this honorable court is, again, supposed to be applying, Louisiana res judicata policy is the exact same. Under the Terrebonne decision, which I cited from Louisiana law. Let me give you an example. You're saying because the defeat of the bad faith claim, the granting of summary judgment on that, precludes a necessary element of the excess judgment claim. Therefore, we should just treat the excess judgment claim as if it's been dismissed because that's the practical consequence of the judge's earlier ruling. I mean, that happens all the time. Let's say there's a civil rights violation. Someone sues the police officers and the city. And the district court throws out the case against the police officers, finding there was no excessive force. But the city is still in the case. But for the city to be liable, there had to be excessive force in the first place. I mean, that wouldn't mean, because we get those appeals all the time on qualified immunity from the officer, but you don't get them from the city. But it's your position basically that any time an essential element of a claim is thrown out, even though that claim itself isn't thrown out, that we have jurisdiction over the whole case. That is not my technical position. My technical position is that in instance where Louisiana courts have said that there's a policy, specifically under Louisiana, under res judicata, that the case should not be re-litigated, especially when Mr. Paul Babin put those issues voluntarily before the court during that trial. They went for misrepresentation. They went for indemnity. They went for duty to defend and lost on all of them. That shelter shouldn't have to be, again, re-litigate this and plaintiffs get another bite at the apple, this time now in federal court. We believe that the— What if the court had denied res judicata on everything incorrectly in your view? Would we, because of those principles you just cited, would we have a basis for interlocutory review? If they had denied res judicata on all of those issues, would this honorable court have jurisdiction to hear those? As you just said, the policy is all about not having you have to go to trial a second time. It is my argument that, yes, they would. Because of the policy stated under Louisiana law that do fit into the Cohen Doctrine and the policy stated also in federal law on the appellate jurisdiction that this honorable court does have. The uniqueness of the federal appellate jurisdiction in this case is anchored directly to the fact that we're hearing a Louisiana case as opposed to a Mississippi or Texas case with this underlying claim. The irredetermination of jurisdiction here is because of the res judicata. I don't know. From my eyes, the underlying claims here seem pretty simple, but this has morphed into seemingly to me a more complex enterprise that we're talking about. The Cohen Doctrine and, you know, issue preclusion, bell none, claims preclusion, the 1970s. You know, it's the procedural piece of it is seemingly or may be infinitely more complex than what was going on below on the merits of the case. I mean, something about that is not – something about that picture is troublesome. That I understand and commiserate with, but, Your Honor, we don't pick the forum as a defendant. Well, I get it, and we don't pick the cases we get up here either, but this portends of something worse in the writing of whatever we would write that would be infinitely more foreboding than what y'all got going on below, and that's not our principal enterprise here. You've got a, quote, technical argument, close quote, and then you've got a practical argument, close quote, that you're presenting, you know, to our panel to deal with something where the district court said X, but he meant Y. And I would dare you to find a case and cite me, or as Frank Murray would say, you know, a white cow with a pink tail case that that's what, yeah, you got to let, because that's exactly what Murray would say. You find me a white cow with a pink tail. Or that dog don't hunt. Exactly. Not just a white cow, but it's got to have a pink tail for this deal, you know, driving. That's Louisiana jurisprudence. It is. It definitely is, you know, because that's what this, so I'm like, you know, anyway, it's just something about this. If you go back to the trial, if you look at the actual trial court's decision on no duty to indemnify, no misrepresentation and no duty to defend, you'll see there the judge said bad facts make bad law. However, this is the case in which we find it, and I actually do believe that there is federal case law as well as state case law that supports the notion that this does fit into that circumstance, where this honorable court does have jurisdiction. Let me ask you a question. The district court denied summary judgment on the excess judgment claim while it was granting summary judgment on the misrepresentation claim. So you're basically arguing that the district court did not realize what he was doing because he should not have denied the claim, but he did deny summary judgment on the excess judgment claim. I am arguing that properly 1973 is out, which— I understand that. That's to your conclusion. But what do you do with the circumstance that you move for summary judgment and you didn't get summary judgment on the excess claim? The district court denied it. Now, when you say, well, the practical effect of taking out bad faith on the grant of summary judgment took out the other one. So you're basically saying he was in error in what he did. I think in— Was he in error in doing that? I think I understand your question, but I— Well, then answer it then. Sure. Well, he didn't say he denied motion for summary judgment. He said denied—he didn't say he denied outright because you're not entitled to it. He said denied we need more discovery, time for discovery. And that's just pushing further into litigation, more time, more expense, everything, when we have a res judicata issue. And Louisiana has stated that we as a defendant on res judicata— If you're intending to dismiss all the claims, there would be no basis for any further discovery. I don't understand. I agree 100 percent. Well, what you're basically saying, that the district court was in— you're here arguing to us that the district court blow was in error in denying a summary judgment. And so therefore we—and that's what it boils down to. But that claim is—he's denied it, and it's not before it. You've got the question, do you have before us the question of the validity of their taking out of the bad faith? That is, what you want us to do is to say the court erred in denying summary judgment, and hence we're going to do it. How do you—that's where the jurisdictional rub comes here, I think, in part. Is it? I mean, you've got two claims, and you succeed in one of them, and they don't succeed in the other. The district court denied it. One— Maybe he shouldn't have done that, but he did, and so you've got to—you don't have a final judgment. What do you say to that? One is the bedrock of the other, and according to Louisiana res judicata, it was a— Well, no, look, you've got—the district court denies a summary judgment. You're going to have to get to a judgment. You don't come up here on denials of summary judgment. You come up here on judgments, right? And I think— I never got a ticket from New Orleans. We may be here again, but it's going to be on the same issue after a lot of litigation, and that is what res judicata is meant to protect against. They dismiss a lot of cases that are warranted jurisdiction and have them settled, and they go back and establish jurisdiction and come back because that's the rules of the game, and it's very important. How do we get around that? I mean, just straightaway, how do we get—you say, well, there's a practical matter they did that. There's nothing practical about saying that the ruling below was an annulment of summary judgment, and the relief you seek is to reverse that decision. And he—so you've got an ongoing claim there. It is—the relief that we seek is to determine that his granting of summary judgment on the issues of res judicata of 1973, in effect, is the cornerstone of the excess judgment liable. But you've got to convince him of that or get a ruling on that. I mean, it's often the case early—big motion to dismiss gets filed. There's eight claims. Six of them get knocked out on motion to dismiss, let's say. There's two claims left, but the lawyers all realize, oh, you know what? Look at what the judge said, his reasoning. This case is over. But you've still got those two claims. You've still got to get the judge to dismiss them, even if you rely on the judge's prior reasoning at the motion to dismiss and then move for summary judgment on those two claims. I mean, it just seems like you want to short-circuit an appeal before there's actually a final judgment. But in the district court, you just tell the district judge, your ruling, practically speaking, defeats this other claim, so please now dismiss this other claim so we have a final judgment or enter a partial judgment under 54B on this claim or certify under 1292 that this ruling you already made is going to decide the whole case and therefore it should be an interlocutory appeal. But there's all these structures or procedures that are created to allow you to get up here without a final judgment, but this seems to short-circuit all that. So one of the other mechanisms that we do have available to us is Federal Rules of Procedure No. 5, which allows parties to ask the district court for or presumably allows this court to ask for. Before you use the whole panoply of the Federal Rules of Procedure, you have a live case down there, and it's still pending. You can do what you want to with it, but you've got to go back and ask him to reconsider his denial of motion for sermon judgment and put this argument before him and find out if he really intended to find bad faith by his finding of bad faith to foreclose this claim. Now understanding that's what he did, he ratified it. Then he denies that and you get a final judgment. Now you've got something to appeal. So there's nothing. You're not deprived of all kinds of remedies, but you'd ask us to do something we're powerless to do. It appears to me that under Rules of Appellate Procedure No. 5, this Honorable Court, if it decides it lacks jurisdiction in this particular case, it can ask this district court for clarification, especially when the district court's ruling states that you . . . Well, that's effectively what happens when it goes back. But that's an alternative argument. If we think there's uncertainty as to jurisdiction, perhaps it can be clarified. But I don't see any uncertainty in what I see in this record. I do, Your Honor. I beg to differ. Especially when the court states shelter has not fully explained how it is entitled to a motion for summary judgment on the excess. A lot of ink has been spilled since then, very clearly stating, and which plaintiff also agrees, that 1973 is the source and summit. If you don't have 1973, you don't have an excess judgment case. And so no one's disagreeing with that, but you tell the district judge that, say, look, you're ruling on bad faith, dooms, the excess compensation. Enter a final judgment, then we can take it up to the circuit. I mean, that happens all the time. But for the purposes of . . . And no one asked him to do that. But for the purposes of this appeal today, and this is not my alternative argument, my main argument here is that this Honorable Court does have appellate jurisprudence, appellate jurisdiction to hear this case under both federal and state jurisprudence of res judicata principles. Well, let's just say you've been less than convincing about that. Okay? Let's just put it that way. And I meant no disrespect when I said . . . Sure. . . . about the 20 that have been dubious. I mean, it's not the first time people have come up here and want to create a notion of what I call expedient jurisdiction, close quote. And there is no such. It's plenty of times the parties gloss over it because they want us to give an answer. And we get that. You know, you've got a client and all that, but that's just not the way it works. Baton Rouge is just 60 miles up the pike. As far as I know, Judge Brady is still there. So, you know, we pour it out. You go back up the highway 60 miles, and you all do whatever you do. If you come back, maybe get a different panel or whatever. But there's not all this uncertainty, you know, of having to link doctrines. We've gone through Cohen and collateral order, all this kind of stuff, of which the district court, that's the mainstay. Nobody asked that. But when you give us five different theories upon which we can opine that there is something and nobody asked the district court who's up there. It's kind of like we said in the other case. I mean, what is wrong with pointing out to the court there the error, the uncertainty, whatever the case is? I mean, what's up with that? They just leave it like it is, take it to the Fifth Circuit. Both of you have clients. Maybe there's money to burn. I don't know. I understand you want to, not you personally, but want to, you know, get out for money, and you're worried about you don't want them getting the second bite and so on and so forth and all that. We get that, but that's just not what we do. You know, we wouldn't have raised all these questions. I mean, they're reading the briefs. We raised the question. We said definitely in the briefs it's not clear. Sent out a letter. Both of you filed stuff that's not clear. We hear a whole oral argument on the jurisdictional point. That ought to be the best evidence in the world that there's a problem. Your Honor, when Shelter received the notice of appeal to this honorable court filed by plaintiffs, they had a decision to make. Do they fight the appeal straight out, or do they use this case law that's there? Although it may be. We're not quarreling with whatever strategies, you know, there may be. It's like, but once the court points it out, as we have a duty to notice our own jurisdiction, king's X. It's a whole different track. It's not quarreling with the strategy, motives, none of that said issue. That's why we read it. Some people may not think we read this stuff, but we do. And we take our duty very seriously. And as the Supreme Court tells us, you do your job and we do ours. So we say, you do your job and we'll do ours. But we're not going to do your job because of expediency. I mean, that's the only point we're making. Not personal to you, but just period. It is what it is. The judge might have been just going fast, you know, looked at the statute, you know, was errant. You know, whatever the case may be, but that's why we identified the issue. And, frankly, nothing has changed, you know, in terms of all of that. So, at any rate, you're a good lawyer. I suspect if you're back there, you'll prevent the proverbial second bite, third bite, whatever the case. You related to the Greg Morrow in Lafayette? I am. I'm his son. That's your dad? Okay. Well, he was very able back in the day. Is he still practicing? I hope he didn't offend you in any way. No, he and I were colleagues back in the day when we were AUSAs. I thought you probably were related to him. But, anyway, it was a loaded question, I'm afraid. But, anyway, we got your argument. Thank you. We appreciate it. All right. Mr. Honken, you want two tablets from the Mount that you've argued for, two tablets that come from the Mount of Fifth Circuit that say, no jurisdiction, here's why, da-da-da-da-da-da-da, with all the drama attended to them. That's what I got from it. Maybe not the Mount High part, but you're just saying if you send it back, you tell him because I don't want to tell him what he did. I want the Fifth Circuit to explain so I can just take it in there to him and he can see it and he'll know exactly. I don't want to have to go and tell Judge Brady that he messed up. I'm over-dramatizing, I understand. But I did not miss the point that you said if you send it back, he will know from the Fifth Circuit, you know, where the problem is. Well, I think the issue, and I heard the panel say this a number of times during Mr. Morrill's argument, a cause of action was survived. And Judge Costa, you had said plaintiff brings eight causes of action, six are removed. That's not the case here. There's only one cause of action, excess judgment liability. That's it. What survived? You have to have 1973 to have excess judgment liability. He kicked out 1973 but says I keep excess judgment liability. What did you want discovery on? I feel like we're going in circles here. But what did you ask the judge for discovery on that he granted? If everything's gone, why do you need discovery? That makes no sense whatsoever to me. Well, it didn't make any sense to us either, Your Honor. You asked for the discovery. We did because so procedurally, again, instead of filing a 12B motion, the defendants waited and filed a Rule 56 motion. As this Court knows, different legal standard, genuine issue of material fact. They had a purely legal argument, which they converted voluntarily into a Rule 56. In our first motion, we told the judge, we haven't had adequate operative briefed of Celotex. We haven't had an opportunity to conduct discovery. We've served it. They haven't answered it. Still to this day haven't answered it. And we need that discovery. But, hey, if you want to look at this purely legal, here is the law. Judge Kelly, excuse me, Judge Brady, wouldn't recognize what Kelly said. And Kelly was very, very clear that there used to be a jurisprudential rule. It is now a statutory rule. And this is the statute. And the origin of this cause of action is this statute. So by kicking the statute out and maintaining the cause of action, it may be a partial judgment. I'm just perplexed why you want to say your whole case is doomed when the judge didn't think that. I mean I understand the legal argument you're making. But if it were me and my one claim under the order was still alive, I'd run with it. Well, again, I don't believe it is doomed. I believe what is the law. Because you think he made a mistake on res judicata, though. Well, he did and he didn't. I mean, he clearly said, look, your cause of action didn't come into existence until after this judgment, and therefore it can't be res judicata. He said that, but then said I'm kicking it out under res judicata. I mean, this judgment cannot be reconciled with itself. It is the quintessential house divided. It says it's out of existence. Do you think this is the first order or opinion from a judge that had some what a lawyer perceives as inconsistencies in it? I do not, Your Honor. I mean. What I do suggest is that either option that this court elects to remedy or resolve this issue will solve the problem. If it's resolved in jurisdiction, there will be an analysis that says why. That analysis will provide guidance to the district court. If the court. You've got a finding blow with the district court that he ruled in no bad faith. Now, counsel opposite wants to keep that ruling, put it in his pocket, doesn't want to give it up. I understand that. And, you know, on the other hand, you want to revisit it. I was a very young trial lawyer. I learned when a judge rules for you, you get out of the door and don't hang around. But you don't want to revisit those rule-payable rulings. But that's going back down to the district court. If he wants to try to hold on to that ruling, you want to persuade him to the contrary. So the problem with that analysis, Your Honor, is that, again. Not analysis, I must say. Well, that anybody ruled on the excess judgment is what Shelter keeps arguing, that they said. No one said anything. It is a legal fallacy. If the excess judgment liability cause of action did not come into existence until Judge Kelly in the 19th JDC signs that document, he didn't consider anything. It's over. It's done. What he considered were violations of subsection B, which is entirely separate from subsection A. They want to say he used the words arbitrary and capricious. That's fantastic. But those words apply only in B-5 and B-6, not to any other B factor. And they certainly don't apply to A. A has been interpreted by the Louisiana Supreme Court and each appellate court underneath it to say that insurers may be found liable for excess judgment liability even in cases of negligence. They do not use the word bad faith. They use the words interchangeably bad faith, failure to settle, and excess judgment liability. There is no requirement whatsoever to prove arbitrary and capricious behavior. They can't cite a single case, and the statute itself makes it clear. I'm sure this Court is well aware of the inclusion of the one is the exclusion of the other. Only in B-5 and B-6 do the words arbitrary and capricious appear. Section A has no such reference. And unless you have any other specific questions, I see my red light is on, and I will. All right. Thank you, counsel. Thank you, Your Honor. Interesting case. All right. That concludes the case for argument this morning.